# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE THE WENDY'S COMPANY SHAREHOLDER DERIVATIVE ACTION | ) CASE NO: 1:16-cv-01153 <br> ) Judge Timothy S. Black <br> ) <br> ) |

## PLAINTIFF JAMES GRAHAM'S MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE LITIGATION SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23.1, Plaintiff James Graham ("Plaintiff" or "Graham"), by and through his undersigned counsel, hereby respectfully move the Court for an order preliminarily approving the derivative action settlement. The grounds for this Motion are fully set forth in the supporting brief filed concurrently herewith.

**STRAUSS TROY**

 /s/ *Richard S. Wayne*
Richard S. Wayne (Ohio Atty. #0022390)
William K. Flynn (Ohio Atty. #0029536)
150 E. Fourth Street
Cincinnati, OH 45202-4018
Telephone: (513) 621-2120
Facsimile: (513) 629-9426
Email: *rswayne@strausstroy.com*
Email: *wkflynn@strausstroy.com*

**FARUQI & FARUQI, LLP**
Stuart J. Guber (*admitted pro hac vice*)
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: (215) 277-5770
Facsimile: (215) 277-5771

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE THE WENDY'S COMPANY<br>SHAREHOLDER DERIVATIVE ACTION | ) CASE NO: 1:16-cv-01153-TSB<br>) JUDGE TIMOTHY S. BLACK<br>)<br>) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF JAMES GRAHAM'S MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE LITIGATION SETTLEMENT

Following extensive arm's-length negotiations, Plaintiff James Graham ("Graham" or "Plaintiff"), the Individual Defendants,[1] and Nominal Defendant the Wendy's Company ("Wendy's" or the "Company") have reached a fair, reasonable and adequate settlement (the "Settlement") which fully resolves and settles the Released Claims in the above-captioned action. Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, Plaintiff respectfully submits this memorandum of law in support of its Motion for Preliminary Approval of Derivative Litigation Settlement (the "Motion"). Defendants do not oppose the relief sought in the Motion.

I.  INTRODUCTION

The above captioned shareholder derivative action (the "Action") was brought by Plaintiff on behalf of Wendy's against certain of its current and former directors and executive officers. The Action arises out of a third-party criminal cyberattack at certain franchisee-owned Wendy's restaurant locations, in which malware was placed on the franchisees' point-of-sale ("POS") systems (the "Data Breach").

Plaintiff's decision to resolve the Action at this time is well informed. The Settlement is the product of a months-long, hard-fought, arm's-length negotiation which followed a formal information session with Company personnel, the review of nonpublic and confidential information and materials, an in-person mediation with a mediator experienced in addressing

---

[1] All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation of Settlement (the "Stipulation") which is attached as Exhibit 1 to the Declaration of Stuart J. Guber ("Guber Decl.") filed herewith. The Individual Defendants are: Nelson Peltz, Peter W. May, Emil J. Brolick, Clive Chajet, Edward P. Garden, Janet Hill, Joseph A. Levato, J. Randolph Lewis, Peter H. Rothschild, David E. Schwab II, Roland C. Smith, Raymond S. Troubh, Jack G. Wasserman, Michelle J. Mathews-Spradlin, Dennis M. Kass, Matthew Peltz, Todd A. Penegor, and Robert D. Wright. At time herein, the Individual Defendants and Wendy's are collectively referred to as "Defendants."

1

cybersecurity and shareholder derivative claims, and consultation with a cybersecurity expert. The resulting cybersecurity-focused corporate governance reforms set forth in the Stipulation provide substantial benefits to the Company and the Current Wendy's Stockholders, and are designed to help improve the Board's oversight of cybersecurity.[2]

Specifically, the Settlement provides for, among other things, a Board-level Technology Committee with oversight responsibilities relating to matters of the Company's information technology and cybersecurity. The Settlement further provides that the newly-created Technology Committee will have an oversight role with respect to the Company's cybersecurity, including that Wendy's Management will report to the Technology Committee on any material findings arising out of the annual third-party Qualified Security Assessor ("QSA") reviews of the Company. Stipulation, ¶ 2.1. Further, the Measures require the Company to maintain its Wendy's Technology Advisory Council ("WTAC") of franchisee representatives, to facilitate and encourage conversation with the Company's franchisees regarding technology matters and concerns. *Id.* The Settlement additionally provides that the Company will either provide certain foundational security services to its franchisees, or will designate an approved vendor for similar services. Finally, and among other Measures set forth in full in the Stipulation, the Settlement requires the maintenance of certain additional processes, policies and procedures that the Parties believe will help further reduce the risk of future intrusions and will help strengthen the Company's response to evolving cyber threats. The Parties have agreed that the Settlement is in the best interests of the Company and confers a material benefit upon the Company and the Current Wendy's Stockholders. *See* Stipulation, Part II at p. 7; ¶ 2.3.

---

[2] The Measures are set forth in ¶ 2.1 of the Stipulation.

After negotiating the material terms of the Settlement, counsel for the Parties with the assistance and oversight of Ralph B. Levy of JAMS, reached an agreement at arm's length and in good faith on the amount of attorneys' fees and reimbursement of expenses to be paid to Shareholders' Counsel in recognition of the substantial benefits conferred upon the Company by way of the Settlement. *Id.* at ¶ 5.1. As a result of those negotiations, Wendy's insurer, on behalf of Defendants, agreed to pay an award of attorneys' fees and reimbursement of expenses to Shareholders' Counsel in the amount of $950,000 (the "Fee Award"), subject to the approval of the Court. *Id.*

Preliminary approval of a settlement should be granted unless the settlement appears, on its face, to be flawed or collusive. *See, e.g.*, *Robinson v. Ford Motor Co.*, Nos. 1:04 CV 00844, 1:04 CV 00845, 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005) (at preliminary approval stage, court ensures that the "settlement is neither illegal nor collusive"); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015-16 (S.D. Ohio 2001) (preliminary approval appropriate absent "obvious deficiencies" such as "collusive negotiations" or "preferential treatment to class representatives," as long as settlement "falls within the range of possible approval") (quoting *Manual for Complex Litig.* § 30.44 (2d ed. 1985)). Here, the proposed Settlement of this Action: (i) provides substantial and necessary benefits to Wendy's and its stockholders; (ii) was achieved after Plaintiff received substantial access to non-public, confidential information, and (iii) is the product of robust, arm's-length negotiations overseen by a qualified mediator.

Plaintiff respectfully submits, therefore, that the proposed Settlement is likely to be found to be fair, reasonable, and adequate. Accordingly, Plaintiff respectfully asks that the Court enter the [Proposed] Order Preliminarily Approving Settlement, approve the attached proposed Notice of Proposed Settlement, and set a prompt date for a final settlement approval hearing.

## II.     BACKGROUND OF THE ACTION

### A. Factual Background

According to its public filings, Wendy's is the world's third largest quick-service restaurant company in the hamburger sandwich segment. Wendy's is primarily engaged in the business of operating, developing and franchising a system of distinctive quick-service restaurants serving high quality food. The Company maintains over 6,000 Wendy's establishments in North America, the majority of which are franchisee owned, with approximately 337 corporate owned.

In January 2016, Wendy's announced that it was investigating reports of suspicious activity involving payment cards used at some of its restaurants. Shortly thereafter, the Company disclosed that certain franchisee-owned restaurant locations were found by cybersecurity experts to have malware on their systems, and that the Company was continuing to work closely with cybersecurity experts and law enforcement officials to investigate the matter. In May 2016, the Company disclosed that: "Based on the preliminary findings of the investigation and other information, the Company believes that malware, installed through the use of compromised third-party vendor credentials, affected one particular point of sale ['POS'] system at fewer than 300 of approximately 5,500 franchised North America Wendy's restaurants, starting in the fall of 2015." The Company further disclosed that the malware had been disabled and eradicated in affected restaurants, but that the investigation was ongoing.

The Company subsequently announced that, in its continued investigation, the Company discovered a variant of the malware on a different POS system at additional franchisee-owned restaurants. The announcement stated: "Many franchisees and operators throughout the retail and restaurant industries contract with third-party service providers to maintain and support their POS systems. The Company believes this series of cybersecurity attacks resulted from certain service

4

providers' remote access credentials being compromised, allowing access to the POS system in certain franchise restaurants serviced by those providers." The Company further disclosed that no Company-operated restaurants were impacted by this activity.

Based on these events, the Action alleges that the Company was harmed by the Individual Defendants' breaches of fiduciary duty.

### B. Procedural Background

The Action was commenced by Plaintiff Graham in the U.S. District Court for the Southern District of Ohio (the "Court") on December 16, 2016. The Action is based on the Data Breach and related events and alleges that the Individual Defendants breached their fiduciary duties, wasted corporate assets, were unjustly enriched, and committed gross mismanagement in their oversight of the Company's cyber risks.

Defendants moved to dismiss the Graham Complaint on March 10, 2017, on the grounds that: (1) Graham failed to meet the stringent pleading requirements to show demand futility under Delaware law; and (2) he failed to plead any actionable claims under Rule 12(b)(6) – including because duty of care claims against the directors were exculpated and plaintiff did not state a claim for duty of loyalty based on a failure of oversight. Defendants argued that no court had ever sustained derivative claims against directors arising out of a third-party criminal cyberattack. *See In re The Home Depot, Inc. S'holder Deriv. Litig.*, No. 15-cv-2999, 2016 WL 6995676 (N.D. Ga. Nov. 30, 2016). Defendants further noted that certain of the Individual Defendants are significant stockholders of Wendy's, and their economic interests were therefore aligned at all times with those of the other stockholders – including the plaintiff.

After Defendants filed their Motion to Dismiss, another shareholder derivative action based on the Data Breach was filed by Wendy's shareholder Thomas Caracci ("Caracci.

On March 22, 2017, counsel for Michael Coahn, another shareholder of Wendy's, sent a pre-suit demand (the "Demand") pursuant to Delaware law to the Company's Board of Directors (the "Board"), demanding that the Board investigate potential breaches of fiduciary duty related to the Data Breach.  The Demand alleged, among other things, that management breached their fiduciary duties of loyalty and good faith by: (i) failing to implement and enforce a system of effective internal controls and procedures with respect to data security for the Company and its franchisees; (ii) failing to exercise their oversight duties by allegedly not monitoring the Company and its franchisees' compliance with federal and state laws; and (iii) failing to cause the Company to make full and fair disclosures concerning the effectiveness of the Company's policies and procedures with respect to data security and the scope and impact of the data breach.  Coahn therefore demanded that the Board: (i) undertake (or cause to be undertaken) an independent internal investigation into management's alleged violations of Delaware and/or federal law and (ii) commence a civil action against each named member of management to recover for the Company the alleged damages to the Company as a result of the purported breaches of fiduciary duty.

The Board's counsel, Cleary Gottlieb Steen & Hamilton LLP, sent a letter in response to the Demand to Coahn's counsel on May 24, 2017 (the "Cleary Letter").  The Cleary Letter informed Coahn's counsel that, because of the issues being litigated in the Action, the Board would defer taking any action in response to the Demand pending a ruling on the sufficiency of the pleadings in the litigation, and that the Board would monitor developments and consider the Demand at a later time as circumstances warranted.

In May 2017, Graham and Caracci each cross-moved to consolidate the related Wendy's derivative actions and to appoint their respective counsel as Lead Counsel in the consolidated

6

action. On June 12, 2017, the Court entered a Notation Order consolidating the two actions, but did not appoint Lead Counsel.

### C. Settlement Negotiations

On July 31, 2017, counsel for Graham, Coahn, and Caracci attended an informational meeting with counsel for Wendy's and certain Wendy's employees in New York City (the "Information Session"). Also in attendance at the Information Session was Robert Anderson of Navigant, an expert in cybersecurity retained by Plaintiff Graham to advise on substantive issues surrounding the Action. The Information Session was conducted under the mediation privilege and supervised by mediator Jed D. Melnick of JAMS. During the Information Session, Wendy's discussed the Data Breach and reiterated that no Company-owned restaurants or systems were impacted in the third-party criminal attack. Wendy's additionally provided to Shareholders' Counsel and Caracci's counsel certain confidential, non-public information related to Shareholders' allegations and Defendants' defenses in the Action.

Plaintiff's Counsel, along with counsel for Coahn, jointly submitted a detailed settlement demand to counsel for the Defendants on December 6, 2017 which was drafted with the assistance of Mr. Anderson.[3] On February 12, 2018, after submitting their respective mediation statements, Shareholders' Counsel and counsel for the Defendants attended a full day in-person mediation with mediator Ralph B. Levy of JAMS (the "Mediator") in Atlanta, Georgia. While the Parties did not reach an agreement by the conclusion of the Mediation, the respective mediation statements and the dialogue during the Mediation were critical to, and served as the springboard for,

---

[3] As set forth in Plaintiff Graham's Supplemental Memorandum in Further Support of His Motion to Appoint Strauss Troy and Faruqi & Faruqi LLP as Lead Counsel (Dkt. No. 40), counsel for Coahn proposed an arrangement to counsel for Caracci whereby each of the shareholders' counsel would coordinate efforts and work together as equals in the settlement process. Caracci's counsel declined.

subsequent productive conversations between counsel for the Parties with the continued oversight and assistance of the Mediator, which ultimately led to the Settlement

### III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The proposed Settlement creates significant benefits for Wendy's and its stockholders, is the result of intense, arm's-length negotiations by experienced counsel, and merits preliminary approval. If finally approved by the Court, the *Graham* Complaint or the operative complaint in the Action, the Demand, Defendants' Released Claims, and Shareholders' Released Claims, which are inclusive of the claims that have or could have been asserted in the *Graham* Complaint and the *Caracci* Complaint, shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice in return for the significant enhancements to Wendy's corporate governance and internal controls over cybersecurity that Defendants have and will implement or maintain for the benefit of Wendy's and its current stockholders.

#### A. The Preliminary Approval Standard

Plaintiff filed this action pursuant to Rule 23.1, which provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23.1(c). The "general practice" in stockholder derivative suits is that the parties submit the settlement to the Court for its approval together with a request for a hearing on its propriety. *See* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane*, Fed. Practice & Procedure: Civil 3d* § 1839 (2007).

At the preliminary approval stage, the Court is required only to determine whether the proposed settlement could potentially be given final approval. *See, e.g.*, *Robinson*, 2005 WL 5253339, at *3; *Telectronics*, 137 F. Supp. 2d at 1015-16 ("'If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.'") (quoting *Manual for Complex Litig.* § 30.44 (2d ed.1985)); *Jones & Laughlin Steel Corp.*, 804 F.2d at 351.[4]  If the Settlement receives preliminary approval, notice of the settlement terms will be published, in substantially the form as presented in Exhibits B and C to the Stipulation, and the Court will hold a final fairness hearing at which any objections by absent stockholders would be heard.  *See Brent v. Midland Funding LLC*, Case No. 3:11 CV 1332, 2011 WL 3862363, at *12 (N.D. Ohio Sept. 1, 2011) (citing *Williams v. Vukovich*, 720 F.3d 909, 920-21 (6th Cir. 1983)).  After the final fairness hearing, the Court makes a final determination whether the settlement agreement is "fair, reasonable, and adequate."  *Id*.

As one Ohio federal district court has noted:

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's 'intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (quoting *Officers for Justice v. Civil Serv. Commission of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

---

[4] Notably, a weighing of case-specific strengths and weaknesses and an award of attorneys' fees and expenses is not pertinent to the Court's analysis at the preliminary approval stage.  Plaintiff Graham's counsel is prepared to, and will, address these issues in its brief in support of final approval of the Settlement, provided that the Court now grants preliminary approval.

When seeking approval of a derivative settlement, "cases involving dismissal or compromise under Rule 23(e) of nonderivative class actions . . . are relevant by analogy." *Id.*; *see also McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 WL 33127977, at *2 (S.D. Ohio June 3, 1999), *vacated on other grounds*, 261 F.3d 478 (6th Cir. 2001). The Sixth Circuit has recognized that "[s]ettlements are welcome in cases such as this because litigation is 'notoriously difficult and unpredictable.'" *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp*, 714 F.2d 436, 455 (5th Cir. 1983)). *See also, e.g.*, *Brent v. Midland Funding, LLC*, Case No. 3:11 CV 1332, 2011 WL 3862263, at *12 (N.D. Ohio Sept. 1, 2011) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (quotation marks and brackets omitted); *Granada Invs.*, 962 F.2d at 1205 (recognizing that complex litigation is "notoriously difficult and unpredictable" and "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with.").

### B. As the Result of Arm's-Length Negotiations Conducted In Good Faith Among Experienced Counsel, the Proposed Settlement is Sufficiently Fair, Reasonable, and Adequate to Warrant Preliminary Approval

Where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y 1997) (citing *Manual for Complex Litig.* § 30.41). Courts generally presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations among experienced counsel. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *In re PaineWebber Limited P'ships Litig.*, 171 F.R.D. 104,

125 (S.D.N.Y. 1997) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotation marks omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").

The Settlement here was reached only after Plaintiff fully investigated his claims, reviewed non-public and confidential materials, consulted an expert in cybersecurity, and had the opportunity to engage in productive discussions with relevant Company personnel at the Information Session. The Parties, through their highly experienced counsel, then conducted extensive and vigorous arm's-length negotiations, each taking into account the strengths and weaknesses of their respective claims and defenses, while focusing on a resolution that would provide value to the Company and its stockholders going forward.

While Plaintiff believes that his claims are meritorious, there is a risk that Plaintiff's claims would not have survived a motion to dismiss, a motion for summary judgment, or at trial. Instead of facing costly, complex, and protracted litigation, including full-blown discovery, motions practice, a trial, and possible appeals, the Settlement provides fair, reasonable and adequate relief to the Company and its shareholders. Furthermore, counsel for the Parties have extensive experience in complex litigation and are thoroughly familiar with the factual and legal issues of this case and the strengths and weaknesses of the positions of the Parties.

In short, nothing in the course of settlement negotiations or the substance of the Settlement itself raises any doubt as to its fairness. Rather, the arm's-length nature of the negotiations, the critical assistance of an expert, the oversight of the Mediator, and the participation of experienced

lawyers throughout the litigation strongly supports a finding that the proposed Settlement is sufficiently fair, reasonable, and adequate to justify notice to Wendy's stockholders and a final approval hearing.

Moreover, the Measures that the Defendants have agreed to implement or maintain are extensive and important. Because of the Measures, oversight responsibilities of Wendy's cybersecurity will be placed within a specialized Board-level committee as documented in a charter, a critical reporting structure which highlights the seriousness with which the Board has committed to the issue. The Defendants have agreed to implement or maintain a number of other significant enhancements to help improve the Company's cyber-security.

## IV. THE PROPOSED NOTICE IS ADEQUATE AND REASONABLE

If the Court grants preliminary approval, Wendy's will notify Current Wendy's Stockholders pursuant to the Preliminary Approval Order of the Settlement by (a) posting a copy of the Stipulation and Notice on the Investor Relations portion of the Wendy's website; (b) causing a Current Report on Form 8-K to be filed with the SEC that attaches the contents of the Summary Notice, and providing a link in the 8-K to the Stipulation and Notice that shall be posted on the Investor Relations portion of Wendy's website; and (c) causing a copy of the Summary Notice to be published one time in *IBD Weekly Print*.

The proposed notice will advise Current Wendy's Stockholders of the essential terms of the Settlement, and of information regarding the Fee Award. It also will set forth the procedure for objecting to the Settlement or to the request for an award of attorneys' fees and reimbursement of litigation expenses, and will provide specifics on the date, time and place of the Settlement Hearing, thereby satisfying the requirements of Rule 23.1. *See, e.g.*, *Bailey v. White*, 320 F. App'x 364, 367 (6th Cir. 2009) ("notice must 'be reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'") (quoting *UAW v. General Motors Corp.,* 497 F.3d 615, 629 (6th Cir. 2007)). Thus, the form and manner of the proposed notice to Current Wendy's Stockholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1 and due process.

## V.  PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiff requests that the Court establish dates by which the Notices will be published and by which Current Wendy's Stockholders may comment on the Settlement, and a date for the Settlement Hearing. As set forth in the Preliminary Approval Order, Plaintiff proposes the following schedule:

| | |
|---|---|
| Wendy's shall post a copy of the Stipulation and Notice on the Investor Relations portion of the Wendy's website. | Within ten (10) business days following the entry of the Preliminary Approval Order |
| Wendy's shall cause a Current Report on Form 8-K to be filed with the SEC that attaches the contents of the Summary Notice, and shall provide a link in the 8-K to the Stipulation and Notice that shall be posted on the Investor Relations portion of Wendy's website. | Within ten (10) business days following the entry of the Preliminary Approval Order |
| Wendy's shall cause a copy of the Summary Notice to be published one time in *IBD Weekly Print.* | Within ten (10) business days following the entry of the Preliminary Approval Order. |
| All papers in support of the Settlement shall be filed with the Court and served upon all parties to the Action. | At least twenty-eight (28) calendar days prior to the Settlement Hearing |
| Wendy's counsel shall serve on Plaintiff's counsel and file with the Court proof, by affidavit or declaration, of publication of the Notice and Summary Notice. | At least twenty-eight (28) calendar days prior to the Settlement Hearing |
| Any objections to the Settlement by Current Wendy's Stockholders shall be filed with the Court and served upon counsel for Defendant's and Plaintiff. | At least twenty-one (21) calendar days prior to the Settlement Hearing |

| | |
|---|---|
| Any reply papers in support of the Settlement shall be filed with the Court and served upon all parties to the Action. | At least seven (7) calendar days prior to the Settlement Hearing |

Plaintiff proposes that the Settlement Hearing be scheduled for at least sixty-five (65) days after entry of the Preliminary Approval Order. This schedule, similar to those used in numerous derivative and class action settlements, affords due process to Current Wendy's Stockholders with respect to their rights vis-à-vis the Settlement.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff Graham respectfully requests that this Court grant preliminary approval of the Settlement; approve the form, substance, and requirements of the proposed form of Notice and Summary Notice to the Current Wendy's Stockholders; approve the issuance and posting of the Notice and publication of the Summary Notice; and set forth a schedule for the events described herein.

Dated: May 5, 2018

STRAUSS TROY

 */s/ Richard S. Wayne*
Richard S. Wayne
William K. Flynn
150 E. Fourth Street
Cincinnati, OH  45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile

**FARUQI & FARUQI LLP**
Stuart J. Guber
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel. 215-277-5770

*Counsel for Plaintiff James Graham*

14

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court this 6th day of May, 2018. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.  If a party is not given notice electronically through the Court's system a copy will be served by ordinary United States mail, first class postage prepaid, this 6th day of May, 2018.

      /s/ Richard S. Wayne  
      Richard S. Wayne (Ohio Atty. #0022390)