UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

IN RE THE WENDY'S COMPANY ) Case No. 1:16-cv-1153
SHAREHOLDER DERIVATIVE ACTION ) Judge Timothy S. Black

**ORDER GRANTING PLAINTIFF GRAHAM'S MOTION
TO APPOINT LEAD COUNSEL (Doc. 18) and
DENYING PLAINTIFF CARACCI'S MOTION
TO APPOINT LEAD COUNSEL (Doc. 17)**

## I. INTRODUCTION

Before the Court are competing motions to appoint lead counsel, and to consolidate related cases, filed by Plaintiffs James Graham (Doc. 18) and Thomas Caracci (Doc. 17).

Plaintiffs Graham and Caracci—shareholders of Nominal Defendant The Wendy's Company ("Wendy's")—both filed separate shareholder derivative lawsuits alleging that the Individual Defendants—various current and former officers and directors of Wendy's—breached their fiduciary duties to the company and its shareholders with regard to credit card data breaches that occurred at Wendy's franchised restaurants.[1] Graham and Caracci then filed competing motions asking the Court to consolidate the

---

[1] Graham's Complaint is filed in this action at Doc. 1 ("Graham Complaint"). Caracci's Complaint was filed under seal in Case No. 1:17-cv-192 at Doc. 3 ("Caracci Complaint").

Graham and Caracci actions and appoint their respective attorneys as lead counsel. (Docs. 17, 18).[2]

After the Individual Defendants moved to dismiss the Graham Complaint, the parties agreed that the actions should be consolidated and requested that the Court suspend all deadlines in both cases and enter a consolidated briefing schedule. (Doc. 28). The Court granted the parties' request and entered an Order suspending (1) the Individual Defendants' deadline to file a motion to dismiss the Caracci Complaint, and (2) Graham's deadline to respond to the Individual Defendants' motion to dismiss the Graham Complaint. (Doc. 23 at 2). The Order provided the following schedule:

> i) within forty-five (45) days after entry of an Order consolidating the *Graham* Action and appointing lead counsel, lead counsel for the consolidated action shall either file a consolidated complaint on behalf of Plaintiffs (the "Consolidated Complaint") or designate either the *Graham* Complaint or the *Caracci* Complaint as the operative complaint for the consolidated derivative action;
>
> ii) the Individual Defendants and Wendy's shall answer, plead, or otherwise respond to the Consolidated Complaint or designated operative complaint within forty-five (45) days after it is filed;
>
> iii) Plaintiffs' opposition to any motion by Defendants directed at the Consolidated Complaint shall be done within forty-five (45) days after the filing of that motion; and
>
> iv) any reply to Plaintiffs' opposition shall be due within thirty (30) days after Plaintiffs' opposition is filed.

(Doc. 23 at 2-3).

---

[2] Graham requests appointment of the law firms Strauss & Troy and Faruqi & Faruqi ("Graham's Counsel"). Caracci requests appointment of attorney Richard Norton and the law firms Kahn Swick & Foti, LLC and Newman Ferrara LLP ("Caracci's Counsel").

The Court has already granted the parties' motions to the extent they requested consolidating the Graham and Caracci Actions. (*See* Dkt. 3/30/18 Notation Order). At this juncture, the Court must decide whether to appoint Graham's Counsel or Caracci's Counsel as lead counsel in this shareholder derivative litigation.

Also before the Court is Graham's motion for preliminary approval of a settlement agreement. In August, 2017, counsel for Nelson Coahn ("Coahn's Counsel")—another shareholder who had previously issued a shareholder demand pursuant to Del. Ch. Ct. R. 23.1—contacted Graham's Counsel and Caracci's Counsel to propose an arrangement whereby their respective law firms would coordinate and work together as equals, in connection with efforts to explore the potential for, and possibly reach, a settlement on terms that would benefit the company. (Doc. 40-2 at ¶ 6). Graham's Counsel agreed with Coahn's Counsel to work together as equals; Caracci's Counsel did not. (*Id.* at ¶ 7).

On February 12, 2018, Graham's Counsel and Coahn's Counsel participated in a mediation in Atlanta, Georgia. (Doc. 37 at 1). Graham and Coahn eventually reached an agreement to settle the litigation on behalf of the shareholders and Defendants. (*Id.*; Doc. 38). Graham has moved for preliminary approval of that settlement (Doc. 41); Caracci opposes preliminary approval and has requested to be relieved from the mediation privilege in order to explain his opposition (Doc. 42).

## II. STANDARD

It is well established that the Court may appoint a leadership structure of plaintiffs' counsel to coordinate the prosecution of complex litigation. *In re Bendectin Litigation*, 857 F. 2d 290, 297 (6th Cir. 1988). The decision regarding appointment of

lead counsel is within the discretion of the Court. *In re Gas Natural Inc.*, No. 1:13-cv-02805, 2014 U.S. Dist. LEXIS 191536, at * 5 (N.D. Ohio March 7, 2014). The principle that guides the Court in selecting lead counsel is who "will best serve the interest of the plaintiffs." *Id.* (citation omitted). Some factors that courts traditionally consider when appointing a leadership structure in shareholder derivative actions include: (1) the quality of the pleadings; (ii) the vigorousness of the prosecution; (iii) the shareholder plaintiffs that have the largest economic stake in the litigation; and (iv) the competence of counsel. *Id.* (citing Fed. R. Civ. P. 23(g)).

Courts have outlined additional factors to consider when ruling on competing motions for lead counsel, including:

> the quality of the pleading that appears best able to represent the interests of the shareholder class and derivative plaintiffs; the relative economic stakes of the competing litigations in the outcome of the lawsuit (to be accorded "great weight"); the willingness and ability of all contestants to litigate vigorously on behalf of an entire class of shareholders; the absence of any conflict between larger, often institutional, stockholders and smaller stockholders; the enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; competence of counsel and their access to resources necessary to prosecute the claims at issue.

*Kubiak v. Barbas,* Case No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 65903, at ** 5-6 (S.D. Ohio June 14, 2011) (citing *Hirt v. United States Timberlands Serv. Co.*, No. 19575, 2002 Del. Ch. LEXIS 89, at * 5 (Del. Ch. July 3, 2002)).

## III. ANALYSIS

### A. Lead Counsel.

The majority of factors the Court is to consider do not favor any particular attorney or law firm. All of the attorneys seeking appointment have exceptional credentials and extensive experience litigating complex civil cases. All of the attorneys seeking appointment have impressive resumes, experience in prosecuting derivative lawsuits, access to the resources necessary to prosecute the claims at issue, and possess the desire, and ability, to litigate this case on behalf of the plaintiffs. However, the parties have requested the Court to choose, so it must do so.

The Court finds that the circumstances of this case narrowly favor appointing Graham's Counsel.

First, Graham's Counsel has made an effort to be inclusive in this litigation by working together with Coahn's Counsel (and agreeing to work Caracci's Counsel). This Court has previously recognized counsel's ability to make inclusive efforts on behalf of all plaintiffs is an "essential attribute" for lead counsel. *Kubiak*, 2011 U.S. Dist. LEXIS 65903 at * 9.

Second, the Court is particularly impressed with the Faruqi firm because of its experience in *In re The Home Depot, Inc. Shareholder Derivative Litigation*, Lead Case No. 1:15-cv-2999-TWT (N.D. Ga.) ("Home Depot Derivative Action"). In the Home Depot Derivative Action, the Faruqi firm, as co-lead counsel, reached an agreement-in-principle with the defendants whereby Home Depot will adopt and/or maintain various corporate governance reforms pertaining to data security. (Doc. 18 at 14). Graham's

5

Counsel represents this was the first settlement ever achieved in a data breach shareholder derivative lawsuit. (Doc. 40 at 7). One news organization has recognized that the settlement in the Home Depot Derivative Action "may be a good corporate security governance improvement blueprint for other companies." (*See* Doc. 18-3 at 2). The Court finds the Faruqi firm's experience in the Home Depot Derivative Action to be relevant and helpful to this case in light of the fact that both the Graham Complaint and the Caracci Complaint request an Order directing Wendy's to reform its corporate governance.

Third, and similarly, the Court is impressed with the expert retained by Graham's Counsel. Specifically, Graham's Counsel retained Robert E. Anderson, Jr., a cybersecurity expert, for the purpose of assisting the parties in navigating the issues involved in this case as well as devising crucial corporate governance reforms intended to improve Wendy's data security policies and procedures. (Doc. 18 at 16; Doc. 18-4). The Court is impressed by Mr. Anderson's experience as a former national security executive with the FBI, and finds that this experience will be helpful to the corporate governance relief requested by both plaintiffs.

The main argument in support of appointing Caracci's Counsel is that Caracci's Counsel served a pre-lawsuit Section 220 demand for records on Wendy's prior to filing its complaint, whereas Graham's Counsel did not.[3] Caracci's Counsel argues that their

---

[3] A "Section 220 demand" refers to 8 Delaware Code Ann. § 220(b), which provides, "[a]ny stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose," *inter alia*, the corporation's "books and records."

6

ability to review Wendy's books and records while preparing the Caracci Complaint gives their pleading a meaningful advantage over the Graham Complaint. (*See* Doc. 17-1 at PID # 225-228). Specifically, Caracci's Counsel argues the Caracci Complaint more adequately pleads demand futility.[4] (*Id.*) This argument is not availing. The Court acknowledges that, in some instances, a complaint that recites facts obtained from a Section 220 demand may be superior to a complaint that does not. *See In re CytRx Corp. Stockholder Derivative Litig.*, Case No. 11800-VCMR, 2017 Del. Ch. LEXIS 27, at * 11-12 (Del. Ch. Feb. 22, 2017). However, the Court does not put great weight in any differences between the Caracci Complaint and the Graham Complaint at this stage, because the Court's prior order—requested by all parties—allows whoever is designated as lead counsel to file a new, consolidated pleading on behalf of the Plaintiffs. (Doc. 23 at 2-3).

      **B.**    **Settlement Approval.**

Also pending before the Court is the motion for preliminary settlement approval filed by Graham's Counsel. (Doc. 41). The motion asks the Court to preliminarily approve the settlement negotiated by Graham's Counsel, Coahn's Counsel, and the Defendants, to provide notice to other shareholders, and to schedule a settlement hearing.

---

[4] Under Delaware law, a stockholder plaintiff asserting derivative claims must plead that he or she made a demand on the board to investigate potential wrongdoing prior to filing the derivative action, or show that such demand should be excused as futile. Del. Ct. Ch. R. 23.1(a). The Federal Rules of Civil Procedure require a plaintiff to "state with particularity" the reasons demand would be futile. Fed. R. Civ. P. 23.1(b)(3).

The Court finds the motion for settlement approval to be premature and **DENIES** the motion without prejudice.  Specifically, the Court's June 12, 2017 Order, which was agreed to by the parties, requires the attorneys appointed as lead counsel to "file a consolidated complaint on behalf of Plaintiffs (the 'Consolidated Complaint') or designate either the *Graham* Complaint or the *Caracci* Complaint as the operative complaint for the consolidated derivative action."  (Doc. 23 at 2).  The Court finds that having one operative complaint would assist the Court in determining whether the proposed settlement merits preliminary and/or final approval.  The Court additionally finds that having one operative complaint would assist the shareholders receiving notice of proposed settlement in evaluating the agreement and deciding whether or not to object.

Accordingly, as required by this Court's prior order, within 45 days Graham's Counsel shall file (or designate) the operative complaint.  Within 14 days of that filing or designation, Graham shall file an amended motion for preliminary settlement approval to reflect the filing of the operative complaint.

Finally, before the Court is Caracci's motion for leave to file a response to Mr. Graham's motion for preliminary approval of settlement under seal and for relief from the mediation privilege.  (Doc. 42).  Caracci argues that, based on his counsel's participation in a mediation process with Graham's Counsel and counsel for the Defendants, he has reason to believe the settlement reached between Graham and Defendants is the product of collusion.  (Doc. 42-1 at 5).

Caracci's motion (Doc. 42) is **DENIED as moot** in light of the Court's denial of Graham's motion for preliminary approval.  The Court notes, however, that Caracci is

entitled to present his arguments regarding collusion to the Court so that the Court may properly determine whether the proposed settlement is appropriate for preliminary approval. Because the Court cannot conclude from the parties' briefings whether the information Caracci seeks to submit is covered by the mediation privilege, and whether the privilege should apply, the Court will review Caracci's opposition in camera. Pursuant to S.D. Ohio Civ. R. 7.2(a)(2), Caracci shall submit his opposition to the Court under seal for in camera review 21 days after service of Graham's amended motion for preliminary approval (and Caracci shall contemporaneously file a notice that he has done so).

## IV.  CONCLUSION

For the foregoing reasons:

(1) Plaintiff Graham's motion to appoint lead counsel (Doc. 18) is **GRANTED**;

(2) Plaintiff Caracci's motion to appoint lead counsel (Doc. 17) is **DENIED**;

(3) The law firms Strauss Troy and Faruqi and Faruqi are appointed as lead counsel;

(4) Within forty-five (45) days, lead counsel shall either file a consolidated complaint or designate the Graham Complaint as the operative pleading for this consolidated derivative action;

(5) The Individual Defendants and Wendy's shall answer, plead, or otherwise respond to the consolidated complaint within forty-five (45) days after it is filed (or designated);

(6) Plaintiffs' opposition to any motion by Defendants directed at the consolidated complaint shall be due within forty-five (45) days after filing of that motion;

(7) Any reply to Plaintiffs' opposition shall be due within thirty (30) days after Plaintiffs' opposition is filed;

9

(8) Defendants' Motion to Dismiss Plaintiff Graham's Complaint (Doc. 9) is **DENIED AS MOOT**;

(9) Plaintiff Graham's motion for settlement approval (Doc. 41) is **DENIED** as premature; Plaintiff Graham shall file an amended motion for settlement approval within 14 days of filing or designating the operative pleading in this consolidated action; and

(10) Plaintiff Caracci's motion to file under seal and for relief from the mediation privilege is **DENIED as moot**. If and when Plaintiff Graham files an amended motion for preliminary settlement approval, Plaintiff Caracci shall submit his opposition to the Court for in camera review and file a notice that he has done so.

**IT IS SO ORDERED.**

Date: 12/17/18  /s/ *Timothy S. Black*
Timothy S. Black
United States District Judge