# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| IN RE THE WENDY'S COMPANY | : | Case No. 1:16-cv-1153 |
| SHAREHOLDER DERIVATIVE | : | |
| ACTION | : | Judge Timothy S. Black |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR LEAVE TO CONDUCT DISCOVERY (Doc. 73)

This civil case is before the Court on Plaintiff/Objector Thomas Caracci's motion for leave to conduct discovery (Doc. 73), and the parties responsive memoranda (Docs. 76, 77, 78).

## I. BACKGROUND

### A. History Leading to Motion for Leave to Conduct Discovery

This case is a shareholder derivative action arising out of cyber-attacks suffered by certain The Wendy's Company (the "Company") franchises in 2016. The Court has previously provided a <u>detailed</u> factual and procedural history of this case when preliminarily approving the settlement agreement and approving the substance of the proposed notice of the settlement to other shareholders. (Doc. 72 at 1–9). That factual and procedural history provide the background leading to the current motion for leave to conduct discovery. <u>The Court reincorporates the entirety of that factual and procedural history here.</u> (*Id*.)

In **very brief** summation, and to provide context for this current Order, two Company shareholders filed derivative actions following the cyber-attacks – Plaintiffs James Graham and Thomas Caracci. Counsel for the two Plaintiffs fought over lead

counsel.  Before the Court appointed lead counsel, Graham, Caracci, nonparty Michael Coahn (another shareholder), and Defendants (various officers and directors of the Company) attempted to resolve the case.

Graham, Caracci, Coahn, and Defendants agreed to a two-part mediation in May/June 2017, during which the parties would engage in an information session followed by a negotiation session.  The information session occurred in July 2017.  During that session Defendants provided confidential documents to the shareholders.  After that session, Caracci's counsel provided an attorney fee disclosure to Defendants pursuant to Rule VII of this Court's Civil Procedures standing order.  Defendants raised concerns with Caracci's disclosure, which indicated his counsel had already incurred over $525,000 in attorney fees and costs.  Due to Defendants' concerns with the amount of attorney fees, the negotiation session never occurred.

In August 2017, Coahn's counsel reached out to counsel for Graham and Caracci to try and reopen settlement discussions with all shareholder counsel working as equals.  Graham's counsel agreed; Caracci's counsel did not.  In December 2017, Graham and Coahn sent a settlement demand to Defendants, without Caracci.  Upon receipt of this demand, Defendants, Graham, and Coahn agreed to try mediation again.  Defendants informed Caracci's counsel of the mediation, but Caracci did not seek to participate.

In February 2018, Graham, Coahn, and the Defendants reached a material settlement agreement.  The Court then appointed Graham's counsel as lead counsel. *In re Wendy's Co.*, No. 1:16-CV-1153, 2018 WL 6605394, at *1 (S.D. Ohio Dec. 17, 2018).  Graham moved for preliminary approval of a settlement agreement – to which Caracci

objected. The crux of Caracci's objections was that Graham, Coahn, and Defendants colluded when settling.

The Court considered each of Caracci's collusion arguments when deciding the motion for preliminary approval of the settlement agreement, and found no argument persuasive. (Doc. 72 at 15–24). The Court also considered a request by Caracci's to conduct additional discovery. (*Id*. at 26). The Court concluded that, although the settlement agreement was preliminarily approved and the proposed notice submitted by Graham was approved in substance, the proposed notice would not be issued until after Caracci had an opportunity to file a motion for leave to conduct discovery. (*Id*.)

### B. Discovery Sought by Caracci

Caracci used his opportunity and moved for leave to conduct discovery. (Doc. 73). In his memorandum in support of his motion for leave, Caracci states that:

> Plaintiff Caracci – and the Court – should have access to information regarding[:] (1) what was done in relation to the specific information requests [sent from Caracci to Defendants both before and after the preliminary settlement], (2) any other confirmatory discovery that may have been conducted, and/or (3) any expert-crafted proposed improvements in advance of Plaintiff Graham and Coahn agreeing to the proposed settlement and thereafter advocating for its approval.

(Doc. 73-1 at 4; *see also* Doc. 78 at 2). To achieve this end, Caracci attaches to his motion for leave certain discovery requests he seeks to propound to Graham, Defendants, and the Weiser Law Firm (Coahn's counsel). (Docs. 73-2–73-6). These discovery requests were originally issued by Caracci <u>before</u> the Court ordered preliminary approval of the settlement. (Docs. 73-1 at 1). Caracci states this discovery was propounded to

3

bolster his collusion arguments. (Docs. 73-1 at 2). However, now, although he is seeking the same discovery, Caracci suggests that the discovery is "narrowly tailored to investigate the fairness and adequacy of the proposed settlement." (Doc. 73-1 at 5). In order to "narrowly tailor" the discovery, Caracci "limits" his previous requests to the following:[1]

| Exhibit No. | Document Title | Request Nos. |
|---|---|---|
| A (Doc. 73-2) | Interrogatories to Plaintiff Graham | 1-9, 12, 14 and 15 |
| B (Doc. 73-3) | Request for Production to Plaintiff Graham | 1-10, 13-15 |
| C (Doc. 73-4) | Interrogatories to Defendants | 1-4, 8-10 |
| D (Doc. 73-5) | Request for Production to Defendants | 1-2, 4, 7-9 |
| E (Doc. 73-6) | Request for Production, Weiser Law Firm[2] | 1-4, 8-9 |

When reviewing the discovery requests, the Court notes that the requests are much broader than the three categories of information argued by Caracci in his motion. Thus, having reviewed the discovery requests, and for the purposes of this Order, the Court categorizes the above requests into <u>seven groups</u> (the first three of which were identified by Caracci in his motion):

---

[1] Caracci's "limiting" eliminates three interrogatories and two requests for production propounded to Graham, three interrogatories and three requests for production propounded to Defendants, and three requests for production propounded to Weiser.

[2] The discovery sent to Weiser, a nonparty to the action, was issued via subpoena. (Doc. 73-6).

4

1. "Response to Caracci's Information Requests," or specifically what Defendants did in response to Caracci's specific information requests (Doc. 73-1 at 4; Doc. 78 at 2).[3]

2. "Confirmatory Discovery," or discovery used by class counsel to determine that the proposed settlement is fair and adequate. (Doc. 73-1 at 4; Graham Interrogatory No. 14; Graham Requests No. 7 and 14; Defendants Interrogatory No. 9; and Defendants Request No. 8).

3. "Expert Cybersecurity Discovery," or discovery seeking information related to cybersecurity experts. (Doc. 73-1 at 4; Graham Interrogatory No. 4; and Defendants Interrogatory No. 4).

4. "Settlement Process Discovery," or discovery seeking information related to settlement negotiations, values and considerations of the parties when reaching the settlement, the settlement agreement, and the proposed notice. (Graham Interrogatories Nos. 1-3, and 7-9; Graham Requests Nos. 1-2, and 9-10; Defendants Interrogatories Nos. 1-3, and 8; and Defendants Requests Nos. 1-2).

5. "Section 220 Discovery," or discovery related to utilizing a books and records investigation as a Company shareholder pursuant to 8 Del. C. § 220. (Graham Interrogatories Nos. 5-6, and 12; Graham Requests Nos. 3-6, and 13; and Defendants Request No. 7).

6. "Rule VII Discovery," or discovery seeking information related to disclosure of attorney fees pursuant to this Court's Civil Procedure Rule VII. (Graham Request No. 8; and Defendants Request No. 4).[4]

7. "Weiser Discovery," or all discovery propounded to nonparty the Weiser Law Firm. (Weiser Requests Nos. 1-4, and 8-9).

## II. STANDARD OF REVIEW

There is a three-step process to approving derivative action settlements: (1) "the court must preliminarily approve the proposed settlement;" (2) "members of the class must be given notice of the proposed settlement;" and (3) "after holding a [fairness]

---

[3] After review of the discovery requests, there are <u>no requests</u> propounded by Caracci that actually seek this information from Defendants (or Graham).

[4] For the first time on reply, Caracci discusses his Rule VII requests. (Doc. 78 at 5).

5

hearing, the court must give its final approval of the settlement." *Robinson v. Ford Motor Co.*, No. 1:04-CV-844, 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).

> A fairness hearing contains several procedural safeguards: Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement; class members may object to the proposed settlement on the record and class members have a right to participate in the hearing. In satisfying these requirements, **<u>a district court has wide latitude</u>**. It may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision and need not endow objecting class members with the entire panoply of protections afforded by a full-blown trial on the merits.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007) (citations and quotations omitted) (emphasis added).

Within the terms of the fairness hearing, an objector may seek additional discovery. "An objector's request to conduct additional discovery is left to the sound discretion of the court." *Vaughn v. Am. Honda Motor Co.*, No. CIVA 2:04-CV-142 TJW, 2007 WL 2220924, at *2 (E.D. Tex. July 31, 2007). "Objecting class members also do not have a vested 'entitle[ment] to discovery.'" *Int'l Union, United Auto.*, 497 F.3d at 635 (quoting *In re Gen. Tire & Rubber Co. Securities Litig.,* 726 F.2d 1075, 1084 n. 6 (6th Cir.1984)). "[T]he purpose of settlement-related discovery 'is to ensure that the [district court] has sufficient information' to enable it to approve the settlement. *Herrera v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 178 (4th Cir. 2020) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1337 (S.D. Fla. 2011)).

6

Moreover, "settlement-related discovery often delays settlement, introduces uncertainty, and might be undertaken primarily to justify an award of attorneys fees to objector's counsel, thereby justifying a higher standard." *Id*. (quotation omitted) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643 (2004)). "While objectors are entitled to meaningful participation in the settlement proceedings…and leave to be heard…they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *In re Gen. Tire & Rubber,* 726 F.2d at 1084 n. 6 (citations omitted). "A district court, moreover, need grant objectors discovery **only if they can make a colorable claim that the settlement should not be approved**." *Int'l Union, United Auto.*, 497 F.3d at 635 (citing *Geier v. Alexander,* 801 F.2d 799, 809 (6th Cir. 1986).[5] "To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process." *Grier*, 801 F.2d at 809 (internal quotation marks omitted).

## III.  ANALYSIS

This case is venturing into the second and third stages of settlement approval: sending notice to other Company shareholders and conducting a fairness hearing. However, this action is in a unique situation in which a party – Plaintiff Caracci – seeks

---

[5] Before approving a settlement, a district court must conclude that it is "fair, reasonable, and adequate." Fed. R. Civ.P. 23(e)(1)(C); *see* Fed. R. Civ. P. 23(e)(1)(A). "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto.*, 497 F.3d at 631 (citations omitted).  A "colorable claim" that a settlement should not be approved would result in the objector attacking one of these factors.

7

settlement-related discovery <u>before</u> notice is sent to other shareholders. And, although Caracci has been involved in the litigation since the onset, **Caracci is now an objector to the settlement**. Accordingly, this Court need only grant Carracci's discovery if he can make a colorable claim that the settlement should not be approved.[6] And, the Court can, it its discretion, grant Caracci leave to seek all, none, or some of the discovery he requests to propound to Graham, Defendants, and Weiser.

The Court will consider Caracci's arguments in support of his motion for leave to conduct discovery within each of the seven categories of discovery listed, *supra*.

1. **Response to Caracci's Information Requests**

In his motion, Caracci contends that he "should have access to information regarding what was done in relation to the specific information requests." (Doc. 73-1 at 4). These "specific information requests" were, according to Caracci, sent to Defendants via letter after the information session – the one mediation session in which Caracci participated – and in Caracci's settlement demand to Defendants – notably sent <u>after</u> a material settlement agreement was reached. (*Id*.) Caracci argues this information is necessary for him to determine whether the settlement is fair and adequate. (*Id*.) Caracci does not contend that these information requests were sent to Graham or Coahn.

---

[6] Although the Sixth Circuit uses the "colorable claim" analysis, Caracci does not argue that he has a "colorable claim" to the discovery he seeks leave to propound, instead using a three criteria test used by other district courts when assessing whether an objector is entitled to discovery: (1) the nature and amount of previous discovery; (2) the reasonable basis for the evidentiary requests; and, (3) the number and interests of objectors." *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) (quoting HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS (SECOND) § 11.56 at 476 (1985)). Moreover, Caracci only argues that the second criteria is relevant in this instance – that he has a reasonable basis for the discovery requests. The Court construes his "reasonable basis" arguments as support for why Caracci contends he has a colorable claim for the discovery.

After reviewing Caracci's proposed discovery requests, none of the requests actually seek information concerning what Defendants did in response to these requests. However, in Defendants' response to Caracci's motion for leave to conduct discovery, Defendants agreed to produce what, if any, non-privileged material is in Defendants' possession, custody, or control that is "responsive to Caracci's allegation that he 'should have access to information regarding what was done in relation to [his] specific information requests.'" (Doc. 77-2 (quoting Doc. 73-1 at 4)).

Accordingly, given that Defendants agree to this discovery, the Court, in its discretion, **GRANTS** Caracci leave to conduct such discovery. Defendants (only) **SHALL** produce non-privileged, responsive documents concerning what was done in relation to Caracci's specific information requests, to the extent that information has not already been provided to Caracci.

### 2. Confirmatory Discovery

Caracci also argues he should be given access to "any other confirmatory discovery that may have been conducted." (Doc. 73-1 at 4). Caracci acknowledges that he already has reviewed the Section 220 materials, as well as the materials provided by the Company during settlement negotiations. However, he suggests that if additional, Confirmatory Discovery was conducted after he stopped participating in the settlement discussions, he should be provided such Confirmatory Discovery.[7]

---

[7] Defendants, in their response to Caracci's motion for leave, agree to produce such information to Caracci. (Doc. 77 at 2).

The Court agrees that Caracci should be provided the Confirmatory Discovery used by lead plaintiff Graham. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643 (2004) ("Parties to the settlement agreement should generally provide access to discovery produced during the litigation phases of the class action (if any) as a means of facilitating appraisal of the strengths of the class positions on the merits."). *See also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 316 (3d Cir. 2005) (discovery conducted by lead counsel should be made available to objectors).

Accordingly, Caracci's motion for leave to conduct Confirmatory Discovery is **GRANTED**. The Court **ORDERS** Graham and Defendants to respond to the Confirmatory Discovery (Graham Interrogatory No. 14; Graham Requests No. 7 and 14; Defendants Interrogatory No. 9; and Defendants Request No. 8), to the extent this information has not already been provided to Caracci. When responding to these discovery requests, Graham and Defendants shall identify who assisted with responding to the requests. (Graham Interrogatory No. 15; Defendants Interrogatory No. 10).[8]

However, when reaching this conclusion, the Court is <u>not</u> opening the door for Caracci to conduct his own confirmatory discovery. In other words, Caracci is <u>not granted leave</u> to propound any additional discovery beyond the discovery the Court is

---

[8] Graham Interrogatory No. 15 and Defendants Interrogatory No. 10 seek the identity of those persons who assisted with responding to the interrogatories. Similar to these requests, Graham Request No. 15 and Defendants Request No. 9 seek: "Documents sufficient to identify all custodians whose records were searched or otherwise assisted in the production of documents, ESI, or other things responsive to these Requests." Caracci is **DENIED** leave to propound these requests. Of the discovery actually propounded by Caracci, Graham and Defendants are only ordered to provide Confirmatory Discovery documents, and, because the Confirmatory Discovery already exists, responding to these requests will not require searching through custodian files. Accordingly, these requests are purposeless.

ordering in this decision, *supra* and *infra*.

3. **Expert Cybersecurity Discovery**

In his motion, Caracci last contends that he is entitled to information related to what, if any, cybersecurity expert analysis was considered when reaching the settlement. (Doc. 73-1 at 4). Defendants agree to produce this information. (Doc. 77 at 2).

The Court agrees that this information may assist when determining whether the settlement is fair and adequate, given this derivative action is based on a cyberattack and a part of the settlement includes cybersecurity protections by the Company.[9]

Accordingly, Caracci's motion for leave to conduct Expert Cybersecurity Discovery is **GRANTED**. The Court **ORDERS** Graham and Defendants to respond to the Expert Cybersecurity Discovery (Graham Interrogatory No. 4; and Defendants Interrogatory No. 4), to the extent this information has not already been provided to Caracci. When responding to these discovery requests, Graham and Defendants shall identify who assisted with responding to the requests. (Graham Interrogatory No. 15; Defendants Interrogatory No. 10).

The Court next moves into the categories of discovery identified by the Court in Caracci's discovery requests, but not explicitly argued by Caracci in his motion.

---

[9] As part of the cybersecurity discovery, Caracci also argues that he should be given access to the Technology Committee Charter. (Doc. 73-1 at 5). The Technology Committee Charter is part of the settlement agreement and is an act by the Company to develop its cybersecurity and protect against future attacks. Originally, the charter was not going to be produced until days before the proposed date of the settlement hearing. (*Id.*) The Court agrees that Caracci should be given access to the charter; however, according to Graham, the Technology Committee Charter has since been established. (Doc. 81). Thus, Caracci likely already has access to the charter. In the event Caracci does not have a copy of the Technology Committee Charter, Graham **SHALL** provide a copy to Caracci.

### 4. Settlement Process Discovery

Caracci seeks <u>broad</u> discovery into the settlement process – such as settlement communications, discussions between the parties, information on the value Graham gave certain considerations in the settlement, and why and/or how certain settlement decisions (including the proposed notice) were made. In essence, Caracci seeks a play-by-play of all of the settlement discussions during which he was not a part, claiming that Graham "may not have fully understood" the value of the derivative claims and rushed into settlement. (Doc. 78 at 3). Thus, Caracci contends, discovery into the settlement process is appropriate and related to the fairness and adequacy of the settlement. (*Id.*)

The Court is not persuaded by Caracci's thinly-veiled attempt to argue that discovery into the settlement process is necessary to assess the fairness and adequacy of the settlement. Caracci is not entitled to seek discovery "to question and debate every provision of the proposed compromise." *In re Gen. Tire & Rubber,* 726 F.2d at 1084 n. 6. Moreover, the Court considers these requests as another attempt by Caracci to bolster his collusion arguments. "Discovery into the settlement-negotiation process should not be allowed unless objectors make 'a preliminary showing of collusion or other improper behavior.'" *Vaughn*, 2007 WL 2220924 at *2 (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643). This Court already has considered <u>at length</u> – **and rejected** – Caracci's <u>extensive</u> collusion arguments. (Doc. 72 at ). The Court finds it unnecessary to reiterate that analysis here.

12

Accordingly, Caracci is **DENIED** leave to propound his Settlement Process Discovery. (Graham Interrogatories Nos. 1-3, and 7-9; Graham Requests Nos. 1-2, and 9-10; Defendants Interrogatories Nos. 1-3, and 8; and Defendants Requests Nos. 1-2).

### 5. Section 220 Discovery

Caracci's requests also seek discovery related to his request for books and records pursuant to 8 Del. C. § 220, information used by Graham to conclude that a Section 220 demand would be futile, and communications between Defendants, Graham, and Weiser about the Section 220 documents.

First, the Court considers these discovery requests another effort by Caracci to challenge the determination of lead counsel and preliminary approval of the settlement, because Caracci submitted a Section 220 demand and Graham did not. The Court has already considered, and rejected, Caracci's Section 220 arguments twice. (Doc. 49 at 7; Doc. 72 at 18–20). Second, the Court concludes that additional Section 220 Discovery would not assist the Court with determining whether the settlement is fair and adequate.

The Court notes that Caracci is already in possession of the actual Section 220 documents. Caracci may use the content of those documents to make a colorable claim against the settlement, *if one so exists*.

According, Caracci is **DENIED** leave to conduct Section 220 Discovery. (Graham Interrogatories Nos. 5-6, and 12; Graham Requests Nos. 3-6, and 13; and Defendants Request No. 7).

### 6. Rule VII Discovery

This category of discovery relates to this Court's Civil Procedure Rule VII.[10] Rule VII requires a party who intends to apply to <u>this</u> Court for attorney's fees by opposing counsel to provide statements of fees, costs, and other expenses occurred every 120 days. Caracci's discovery requests seek information from Graham and Defendants that indicate whether Graham's counsel complied with this Court's Rule VII. Caracci contends that he should be permitted access to these documents in order to object to the settlement. (Doc. 78 at 5).

The Court disagrees. Although the Court would be displeased if Graham's counsel failed to comply with this Court's standing orders, information related to Graham's counsel's conformance with Rule VII will not assist the Court when determining whether <u>the settlement</u> is fair in this case. **<u>Nor is it a basis for Caracci to make a colorable claim that the settlement should not be approved.</u>** If *any* party were to challenge Graham's failure to comply with Rule VII, it would be Defendants as the opposing party that would be paying the attorney fees (if so ordered by the Court).[11]

Moreover, when reaching this conclusion, the Court is mindful that the "principle factor" to be considered in a proposed settlement in a derivative action "is the extent of

---

[10] *See* Judge Black's Cincinnati Civil Procedures, Rule VII at https://www.ohsd.uscourts.gov/sites/ohsd/files//civil%20procedures%20in%20cincinnati%2011-13%20%282%29.pdf.

[11] The Court notes that, while Caracci is denied this discovery at this time, Graham's counsel must still carry its burden of providing the appropriate documentation when seeking attorney fees. Thus, when this case reaches the stage of considering a fee approval, Caracci will receive documentation concerning the calculation of Graham's counsel's fees and costs.

the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978). *See also In re Intel Corp. Derivative Litig.*, No. 09–cv–867, 2010 WL 2955178, at *1 (D. Del. July 22, 2010). Although an application for attorney fees will inevitably be considered in conjuncture with determining whether the settlement should be approved, attorney fees should not be the driving factor for approving (or disapproving) a settlement that benefits (or fails to benefit) the company. Caracci's Rule VII Discovery requests are solely focused on gaining attorneys fees. *Herrera*, 818 F. App'x at 178 (4th Cir. 2020) (affirming higher standard for objector discovery because "settlement-related discovery… might be undertaken primarily to justify an award of attorneys fees to objector's counsel").

For these reasons, Caracci is **DENIED** leave to take Rule VII Discovery. (Graham Request No. 8; and Defendants Request No. 4).

### 7. The Weiser Law Firm Discovery

The Court last considers whether Caracci is permitted to seek discovery from Weiser, pursuant to a subpoena issued under Federal Rule of Civil Procedure 45. (Doc. 73-6). Weiser represents shareholder Coahn – a nonparty to the litigation, but an active nonparty who engaged in settlement discussions with Graham and Defendants. Caracci issued the subpoena to Weiser on May 22, 2019. (*Id.*) This was <u>after</u> Graham's counsel was appointed lead counsel. (Doc. 49).

Caracci has provided <u>no case law</u> that supports the proposition that an objector to a proposed settlement is entitled to seek discovery from a nonparty in the action. This

Court has found no such authority, and is not inclined to open the door to allowing settlement objectors to issue broad-based subpoenas to nonparties to the litigation.[12]

Moreover, in response to the subpoena, Weiser timely served written objections to Caracci, but Caracci did not move this Court for compliance with the subpoena pursuant to Rule 45. Fed. R. Civ. P. 45(d)(2)(B). (Doc. 73-9). Caracci's motion for leave to conduct discovery can hardly be considered a motion to compel compliance with a subpoena, given Caracci provided <u>zero</u> arguments or legal support related to subpoena compliance in his motion.

Accordingly, Caracci's motion for leave to conduct discovery from the Weiser Law Firm is **DENIED**. (Weiser Requests Nos. 1-4, and 8-9).

<u>In sum</u>, it is within the Court's discretion to determine whether Caracci, as an objector, is entitled to discovery he seeks. The Court, in its broad discretion, will permit Caracci to seek limited discovery, as discussed *supra*, to the extent that such information has not already been provided to Caracci by Graham and Defendants. The Court reiterates that <u>this Order does not permit Caracci to seek discovery outside the confines of this Order, or permit Caracci to further disrupt or delay the settlement proceedings.</u>

---

[12] There is ample authority to support taking discovery from objectors to a settlement, as well as taking discovery from an objector's counsel. *See* NEWBERG ON CLASS ACTIONS (FIFTH) § 13:33 (2011) (citing cases). However, Coahn is not an objector to the settlement and such authority does not support an objector issuing subpoenas to a nonparty.

## IV. CONCLUSION

Based upon the foregoing, Caracci's motion for leave to take discovery (Doc. 73) is **GRANTED IN PART** and **DENIED IN PART**.

Within 28 days of this Order:

1. Plaintiff Graham, to the extent this information is not already in Caracci's possession, custody or control, **SHALL**: (1) respond to Interrogatories (Doc. 73-2) Nos. 4, 14, and 15; and (2) respond to Requests for Production of Documents (Doc. 73-3) Nos. 7 and 14.

2. Defendants, to the extent this information is not already in Caracci's possession, custody or control, **SHALL**: (1) provide nonprivileged and responsive information related to what was done in response to Caracci's specific information requests; (2) respond to Interrogatories (Doc. 73-4) Nos. 4, 9, and 10; and (3) respond to Request for Production of Documents (Doc. 73-5) No. 8.

Within 7 days of this Order, Plaintiff Graham **SHALL** file and send to Chambers via email (black_chambers@ohsd.uscourts.gov): (1) an amended Proposed Notice (including a red-line from the amended version (Doc. 81-2)); and (2) a Proposed Order detailing the schedule of events. After which, the Court will expeditiously set a schedule of events, set a final hearing date, and order the notices to be issued.

Moreover, pursuant to the Southern District of Ohio's Reconstitution Plan, General Order 21-10, and General Order 21-11, the Court will conduct the fairness hearing virtually. Accordingly:

1. Defendants **SHALL** include, and update as necessary, teleconference information when publishing the Stipulation and the Notice on the Investor Relations section of the Company's website.

2. Plaintiff Graham **SHALL** also include, in Section VII of the Proposed Notice, the following language:

This hearing will be conducted by videoconference and teleconference. Counsel of record, and timely objectors, will receive a video conference invite at the email registered in CM/ECF. Non-participants may join the hearing via teleconference. Pursuant to Court order, non-participants are required to mute their telephones during all stages of the proceedings. The teleconference dial-in information will be published in the Investor Relations section of the Company's website [**inset website address link here**], at least seven (7) days before the hearing. The Court may, in its discretion, change the date and/or time of the hearing without further notice to you. If you intend to attend the hearing, please consult the above website for any change in date, time, or format of the hearing.

**IT IS SO ORDERED.**

Date: 5/19/2021

*s/Timothy S. Black*
Timothy S. Black
United States District Judge