UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE THE WENDY'S COMPANY | : | Case No. 1:16-cv-1153 |
| SHAREHOLDER DERIVATIVE | : | |
| ACTION | : | Judge Timothy S. Black |

**ORDER:**
**(1) DENYING MOTION FOR RELIEF FROM MEDIATION PRIVILEGE; AND**
**(2) TEMPORARILY GRANTING LEAVE TO FILE UNDER SEAL (Doc. 89)**

This civil case is before the Court on Plaintiff/Objector Thomas Caracci's motion for leave to file objections to the proposed settlement under seal and for relief from the mediation privilege (Doc. 89), and the parties' responsive memoranda (Docs. 90, 91, 92).

## I.  BACKGROUND

This case is a shareholder derivative action arising out of alleged cyber-attacks suffered by certain The Wendy's Company (the "Company") franchises in 2016.  The Court has previously provided a <u>detailed</u> factual and procedural history of this case when preliminarily approving the settlement agreement.  (Doc. 72 at 1–9).  <u>The Court reincorporates the entirety of that factual and procedural history here.</u>  (*Id*.)

In **very brief** summation, and to provide context for this current Order, two Company shareholders filed derivative actions following the cyber-attacks – Plaintiffs James Graham and Thomas Caracci.  Counsel for the two Plaintiffs fought over lead counsel.  Before the Court appointed lead counsel, Graham, Caracci, nonparty Michael Coahn (another shareholder), and Defendants (various officers and directors of the Company) (hereinafter referred to as "Wendy's") attempted to resolve the case.

Graham, Caracci, Coahn, and Wendy's agreed to a two-part mediation, during which mediation the parties would engage in an information session followed by a negotiation session. The information session occurred in July 2017. During that session Wendy's provided confidential, non-public company documents to the shareholders. The negotiation session never occurred, and this initial mediation proved unsuccessful.

In August 2017, Coahn's counsel reached out to counsel for Graham and Caracci to try and reopen settlement discussions with all shareholder counsel working as equals. Graham's counsel agreed; Caracci's counsel did not. In December 2017, Graham and Coahn sent a settlement demand to Wendy's, without Caracci. Upon receipt of this demand, Wendy's, Graham, and Coahn agreed to try mediation again. Wendy's informed Caracci's counsel of the mediation, but Caracci did not participate.

In February 2018, Graham, Coahn, and Wendy's reached a material settlement agreement. The Court then appointed Graham's counsel as lead counsel. *In re Wendy's Co.*, No. 1:16-CV-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018). The settlement was preliminarily approved. (Doc. 72). The Court, in that Order, granted Caracci leave to move the Court for discovery. (*Id.*) Caracci's motion for discovery was granted in part and denied in part. (Doc. 84). Following that Order, the Court scheduled the settlement fairness hearing to consider final approval of the proposed settlement. (Doc. 86). The settlement fairness hearing is currently scheduled for September 2, 2021. (*Id.*)

Pursuant to that Order, objections to the proposed settlement are due twenty-one days before the hearing. (*Id.*) On July 16, 2021, Caracci filed the instant motion, requesting: (1) leave to file his proposed objections under seal; and (2) for relief from the

mediation privilege. (Doc. 89). The Court ordered expedited briefing on the motion, given the timeline for filings related the hearing and in order to avoid any further delay when considering the parties' proposed settlement. (7/16/2021 Notation Order).

## II. MEDIATION PRIVILEGE

Caracci requests relief from the mediation privilege. (Doc. 89-1 at 5-10). Caracci seeks to disclose: (1) communications made during negotiations; and (2) materials provided by Wendy's to Caracci during the information portion of the mediation process. (*Id*. at 5). The Court will consider these two requests separately.

 **A. Settlement Communications**

  **1. Applicable Law**

All parties apply Delaware law. Caracci also applies federal law. No party discusses or analyzes whether state or federal privilege law applies. Privileges provided by state law apply in a civil case only "with respect to an element of a claim or defense as to which State law supplies the rule of decision." Fed. R. Evid. 501. Here, the operative complaint is the consolidated complaint filed by Graham, which complaint invokes this Court's diversity jurisdiction and state law would govern the claims. (Doc. 50). Thus, the Court will apply Delaware law.

  **2. Application of Privilege Law**

Delaware recognizes the mediation privilege. *Princeton Ins. Co. v. Vergano*, 883 A.2d 44, 65 (Del. Ch. 2005) (analyzing Delaware mediation privilege law); *In re Oracle*

*Corp. Derivative Litig.*, No. CV 2017-0337-SG, 2020 WL 3867407, at *10 (Del. Ch. July 9, 2020) (discussing Delaware mediation privilege).[1]

Caracci does not argue that the mediation privilege does not apply. Instead, he contends that he may break this privilege because parties may disclose settlement negotiations to a court when a court is faced with analyzing the fairness, reasonableness, and adequacy of a proposed settlement. (Doc. 89-1). In support of this proposition, Caracci cites three cases, all from or within the Seventh Circuit. (Doc. 89-1 at 3).

Wendy's contends these cases are not persuasive in the instant action because the Seventh Circuit has not recognized a mediation privilege. (Doc. 91 at 6, n.5). *See also Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2014 WL 1389041, at *4 (N.D. Ill. Apr. 9, 2014) ("The Seventh Circuit has not recognized a federal mediation privilege.").[2] The Court agrees and finds no reason to depart from the long-standing principle of and "strong public policy favoring confidentiality in all mediation proceedings." *In re Oracle*, 2020 WL 3867407 at *10 (citing *United Health All., LLC v. United Med., LLC*, 2013 WL 1874588, at *3 (Del. Ch. May 6, 2013). *See also Goodyear*, 332 F.3d at 976.

Accordingly, Caracci's request for relief from the mediation privilege in order to disclose mediation communications is **DENIED**.

---

[1] Even if federal law applied, the Sixth Circuit also recognizes the privilege. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) ("any communication made in furtherance of settlement are privileged").

[2] After review, this Court has also found no Seventh Circuit case recognizing the privilege.

4

### B. Documents Provided During Settlement Negotiations

Caracci also states that he expects to use documents provided by Wendy's during the information session in his objections. (Doc. 89-1 at 5). According to Wendy's, these documents were "certain confidential, non-public documents and information regarding the Data Breach and the Company's cybersecurity systems, protocols, and procedures." (Doc. 91 at 2). Caracci argues he should be relieved from the mediation privilege and permitted to disclose these documents for the same reasons he sought to disclose communications.

These documents are not necessarily protected by the mediation privilege.[3] *See, e.g., Grupo Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp. 2d 623, 629 (N.D. Ohio 2004). In *Grupo*, the Court granted a motion for a protective order as to settlement communications, citing *Goodyear*, but denied the motion as to "documents which were apparently exchanged during settlement negotiations but were not authored or created for the purpose of settlement negotiations." *Id*. Stated further:

> Documents created for some other purpose do not get clothed in a settlement privilege just because they are exchanged during negotiations. Rather, they must be the type of communications that the privilege was designed to protect: namely, those that are inherently unreliable because of the likelihood of puffery.

*Id*.

---

[3] The parties do not explicitly discuss whether noncommunication materials exchanged during settlement discussions are protected by the privilege. Under Delaware law, documents may be protected. *See, e.g.,* Del. Ch. Ct. R. 174 ("Information received from other parties during the mediation that the recipient does not already have or that is not public shall be used only for the mediation and not for any other purpose."). Regardless, the Agreement, as discussed *infra*, applies and prohibits Caracci from disclosing the documents.

5

From Wendy's description of the documents, these appear to be such documents. However, the Court's analysis does not stop there. Although the documents provided by Wendy's during the information session *may* not be protected by the mediation privilege, these documents are protected by the Mediation Confidentiality and Non-Disclosure Agreement (the "Agreement") signed by Caracci before he participated in the mediation. (Doc. 91 at 2).[4] This Agreement prohibits Caracci or his counsel from disclosing, publishing, disseminating, or otherwise communicating the confidential information provided by Wendy's during the mediation process. (*Id*.)[5]

Other courts have not stricken such agreements that protect confidentiality in the context of a mediation. *In re Teligent, Inc.*, 640 F.3d 53, 59–60 (2d Cir. 2011) ("Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether."); *In re Student Fin. Corp.*, No. CIV.A04-1551JJF, 2007 WL 4643881, at *1 (D. Del. May 25, 2007) ("the courts must remain blind to any confidential statements made during the course of settlement negotiations, particularly where the parties have guaranteed non-disclosure and confidentiality in an agreement").

---

[4] For purposes of this Order, the Court considers the relevant portions of the Agreement as cited by Wendy's to be true. (Doc. 91 at 2–3). Wendy's does not attach the Agreement; however, Caracci does not dispute that he signed the Agreement or that the context of the Agreement as provided by Wendy's is incorrect. (Docs. 89-1; 92).

[5] No party discusses what law governs the Agreement. Caracci mentions the mediation occurred in New York; Wendy's cites both Delaware and Second Circuit cases; the Court is unaware whether there is a choice-of-law provision. However, as discussed *infra*, Caracci provides no persuasive argument under any law that would support him breaching the Agreement or the Court finding the Agreement invalid.

6

Here, Caracci does not dispute that he is bound by this Agreement. (*Id*. at 6, n.3). He mentions the Agreement in a footnote in his opening motion, stating that the motion seeks relief from the Agreement as well. (*Id*.) He does not discuss the Agreement when replying to the oppositions filed by Graham and Wendy's, which oppositions assert that Caracci's motion must be denied pursuant to the Agreement. In sum, Caracci provides no argument – let alone a persuasive justification – as to why this Court should find the Agreement invalid or allow him to breach it.[6] And, the Court declines to do so.

Accordingly, Caracci's motion, to the extent he seeks to relief from the Agreement and/or mediation privilege in order to disclose the confidential information provided by Wendy's during the information session, is **DENIED**.[7]

### C. Waiver

Caracci last argues that he should be able to disclose what occurred during the mediation and the information provided by Wendy's because the other parties waived any protections. (Doc. 89-1 at 7–8; Doc. 92 at 6–8). The Court disagrees.

To be sure, the parties and this Court have discussed, at a high level, the mediation process in prior filings. The existence of a settlement, or that fact that settlement discussions occurred is "generally not privileged." *Grupo*, 331 F. Supp. 2d at 629 (citing

---

[6] For these same reasons, Caracci also appears to be bound by a JAMS Mediation Agreement that prohibits him from disclosing mediation communications. (Doc. 91 at 3). The parties, again, do not attach this agreement; however, Caracci does not dispute that he signed it or that Wendy's representation of the agreement is correct. Thus, even if the mediation privilege did not apply, discussed *supra*, Caracci would be prohibited from disclosing communications pursuant to this second agreement.

[7] This does not preclude Caracci from referencing the Section 220 Documents in his objections to the proposed settlement.

*Goodyear*, 332 F.3d at 981–82). However, "[p]roducing something that is not privileged does not waive the privilege as to other protected communications." *Id*.

This is not a case where the parties have divulged the specific details of the underlying mediation and settlement communications, thus, waiving the privilege. *United Health All.,* 2013 WL 1874588 at *3. This is a case where the parties have, at a high level, discussed mediation proceedings when moving for preliminary approval of the settlement. Saying that such high-level discussions of the mediation process would waive the privilege would be akin to finding that the high-level descriptions litigation parties use in privilege logs waive such privileges. [8] This is simply not true.

Accordingly, Caracci's waiver argument is not well-taken.

### III. FILING UNDER SEAL

Caracci also requests leave to file his objections under seal, stating that he expects to utilize documents subject to a confidentiality agreement between Wendy's and Caracci. Wendy's and Graham do not oppose Caracci filing his objections under seal.

To be sure, the Court has previously and permanently sealed certain documents, allowing the parties to file under seal. However, Caracci's request to file under seal is broad and could very well include information that is not subject to the Court's prior orders or that is not required to be sealed. There is a strong presumption in favor of open court records, and this Court is unable to set forth specific findings and conclusions justifying a permanent and complete seal of Caracci's objections without additional

---

[8] Caracci also does not argue that any other party has breached the agreements, which agreements the other parties would have breached had they disclosed the specifics of the mediation, *i.e.*, the documents and communications.

8

information. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016).

Accordingly, Caracci is **TEMPORARILY GRANTED** leave to file his objections under seal. Within 14 days of that filing, any party may move to permanently seal the document or portions thereof.[9] Given the public's strong interest in viewing judicial records, the Court is reluctant to seal the entire filing and any party seeking to seal the filing or portions thereof must employ the appropriate standards. *Id*.

### IV. CONCLUSION

Based upon the foregoing, Caracci's motion for relief from the mediation privilege is **DENIED**. Caracci's motion for leave to file under seal is **TEMPORARILY GRANTED**, as discussed *supra*.

**IT IS SO ORDERED.**

Date: 7/30/2021

Timothy S. Black
United States District Judge

---

[9] In the event Caracci attaches a document that is already subject to a prior seal order, the party moving to seal may direct the Court to specific citations of (i) the document attached to and/or description in the memorandum of Caracci's objections; and (ii) the relevant Court Order, in lieu of a repeat legal analysis.